Matthew I. Tourtlotte
TOURTLOTTE LAW FIRM, PLLC
1643 24th Street West, Suite 308
Billings, MT 59102
T:  (406) 294-3400
F:  (406) 545-7995
matt@tourtlottefirm.com
*Attorney for Plaintiff, Meidinger*

Veronica A. Procter
Procter Law, PLLC
2718 Mont. Ave., Ste. 200
P.O. Box 782
Billings, MT 59103
T: (406) 294-8915
vp@procterlawfirm.com
*Attorney for Plaintiff, Meidinger*

## MONTANA UNITED STATES DISTRICT COURT, GREAT FALLS DIVISION

| | |
|---|---|
| Lori Meidinger | Cause No. |
| Plaintiff, | |
| v. | Judge |
| STARSTONE Specialty Insurance Company, STARSTONE U.S. Intermediaries, Inc., Core Specialty Insurance Holdings, Inc., and JOHN DOES 1-5. | **PLAINTIFF'S COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| Defendants. | |

COMES NOW, the Plaintiff, Lori Meidinger (Plaintiff) by and through her counsel of record, Matthew I. Tourtlotte, Tourtlotte Law Firm, PLLC., and Veronica A.

Procter, Procter Law, PLLC., and submits the following allegations as her Complaint and in support of her Demand for a trial by jury:

### JURISDICTION AND VENUE:

1. This is a bad faith action regarding the Defendants' violations of statutory and common law claims handling practices.

2. At all time material hereto, Plaintiff was a resident of Custer County, Montana.

3. Defendant Starstone Specialty Insurance Company is a corporation incorporated under the laws of the state of Delaware, with its principal place of business in the state of North Carolina, and was not, and is not a citizen of the State of Montana wherein this action is being brought.

4. Defendant Starstone U.S. Intermediaries, Inc. is a corporation incorporated under the laws of the state of Delaware, with its principal place of business in the state of North Carolina, and was not, and is not a citizen of the State of Montana wherein this action is being brought.

5. Defendant Core Specialty Insurance Holdings, Inc., is a corporation incorporated under the laws of the state of Delaware, with its principal place of business in the state of North Carolina, and was not, and is not a citizen of the state of Montana wherein the action is being brought.

6. The above-described action is one in which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332 and is properly brought before this Court by Plaintiff, in that it is a civil action wherein the matter in controversy exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and is between citizens/entities of different states.

7. All the claims' investigation, claims adjusting decisions, claims approvals for the benefits, claims denials for benefits, and the day-to-day administration of the claim made by Starstone Specialty Insurance Company, Starstone U.S. Intermediaries, Inc., and Core Specialty Insurance Holdings, Inc., (herein after collectively referred to as "Insurer Defendants") occurred within the State of Montana, and Plaintiff is a resident of the state of Montana.

8. Based upon the above facts, this Court has jurisdiction over the claims set forth here and the venue is proper in the Great Falls division.

**SUPPORTING FACTS:**

9. The paragraphs set forth above, are incorporated and realleged in the allegations set forth here.

10. This claim arises from serious injuries Plaintiff sustained on May 16, 2015, related to the negligent acts of Uptown Cowboy and BHS, Inc. ("Uptown Cowboy"), and ("Bucking Horse").

11. Plaintiff retained the services of Donald D. Sommerfeld of the law firm of Tow, Ball, Mackay, Sommerfeld & Turner, PLLP, to bring claims/a civil action against Uptown Cowboy and Bucking Horse in relation to their negligent acts and the injuries Plaintiff sustained as a result of said negligent acts.

12. Mr. Sommerfeld failed to file Plaintiff's action within the required three-year statute of limitations, resulting in Plaintiff's claims/case being dismissed. Mr. Sommerfeld knew he neglected to file Plaintiff's case within the required statute of limitations yet attempted to conceal this fact from Plaintiff.

13. Mr. Sommerfeld did not advise Plaintiff of the admitted malpractice until November of 2018, approximately six (6) months after the malpractice had occurred.

14. Liability for Plaintiff's claims was reasonably clear, and had her Complaint been timely filed, she would have recovered an award of damages against Uptown Cowboy and Bucking Horse, or she would have recovered an agreeable monetary settlement.

15. Instead, Plaintiff was forced to bring an action against Mr. Sommerfeld and his firm for their admitted malpractice to recover any of her damages associated with the injuries she sustained on May 16, 2015. Plaintiff's lawsuit was filed on or around September 14, 2020.

16. Mr. Sommerfeld was insured under a lawyers' professional liability policy of insurance ("The Policy") issued by Insurer Defendants. This policy's policy limits were $1,000,000.00 (One Million Dollars).

17. Insurer Defendants are for-profit insurance companies, licensed to conduct business in the state of Montana.

18. Insurer Defendants are in the business of providing professional liability insurance for claims, such as Plaintiff's malpractice claim, arising in the state of Montana and subject to the laws of Montana.

19. The professional liability insurance coverage and benefits available to Plaintiff under The Policy, were administered by Insurer Defendants.

20. The Insurer Defendants were responsible for investigating Plaintiff's claims, for affirming and/or denying coverage in a prompt, fair, and reasonable manner which is consistent with an insurer's obligations under Montana law, and for quickly and fairly administering the insurance benefits Plaintiff was entitled to, in accordance with The Policy and Montana law.

21. Despite possessing knowledge and evidence that Bucking Horse and Uptown Cowboy did not dispute liability for their negligent acts and Plaintiff's associated injuries and were advance paying for Plaintiff's injuries and wage loss up until the time of the malpractice was discovered, Defendant Insurer Defendants collectively and individually, refused to pay for the medical

treatment recommended and endorsed by Plaintiff's medical treatment providers and/or for Plaintiff's other associated damages related to the injuries she sustained.

22. Insurer Defendants possessed knowledge that Mr. Sommerfeld had engaged in prelitigation settlement negotiations and sent a demand letter to the insurer for Bucking Horse and Uptown Cowboy in October of 2018, detailing Plaintiff's special damages incurred because of her injuries, including her medical expenses and wage loss, which he assessed to be above $240,422.33 at that time.

23. Insurer Defendants were further aware that Mr. Sommerfeld had made *Ridley* and *Dubray* demands to the insurers for Bucking Horse and Uptown Cowboy noting that liability was reasonably clear for her injuries and associated damages.

24. While possessed of the totality of this knowledge regarding liability being reasonably clear for Plaintiff's injuries and associated damages, Insurer Defendants continued to refuse to pay for her damages, including but not limited to the numerous medical interventions and diagnostic interventions, recommended by Plaintiff's treating medical providers.

25. The Insurer Defendants' refusal to pay for the medical and diagnostic interventions (including, but not limited to a spinal cord stimulator) being

recommended by Plaintiff's treating medical providers forced Plaintiff to have to pay out of her own pocket for all the recommended medical treatment.

26. me when Insurer Defendants were denying liability and coverage for Plaintiff's accident-related injuries, associated medical treatment, economic loss, and other damages, Plaintiff was suffering significant pain, discomfort, anxiety, and duress causing her physical condition to worsen.

27. On or around June 17, 2019, a prelitigation demand was sent to the Insurer Defendants that was within the policy limits of the Defendant Insurer's policy.

28. The prelitigation demand noted liability was admitted to as being reasonably clear, that witnesses to Plaintiff's accident affirmed Plaintiff had no comparative fault for her injuries, and detailed the considerable related damages as previously delineated and described by Plaintiff's former attorney, Mr. Sommerfeld.

29. Insurer Defendants possessed knowledge that the policy of insurance affording coverage for Bucking Horse and Uptown Cowboy was $2,000,00.00 (Two Million Dollars) per occurrence.

30. Insurer Defendants possessed knowledge that Mr. Sommerfeld's malpractice was admitted, thus precluding Plaintiff from obtaining the policy limits available to her for Bucking Horse and Uptown Cowboy's negligent acts and her associated injuries under that policy of insurance.

31. Despite possessing the above-described knowledge and the opinions of Plaintiff's treating medical providers that her injuries were related to her accident in May of 2015, Defendant Insurers retained a well-known defense expert, Emily, Heid, MD to provide opinions wholly contrary to those opinions of Plaintiff's treating medical providers. Dr. Heid was not qualified to render the opinions provided, yet Insurer Defendants improperly relied upon Dr. Heid's opinions to support their continued denials of medical care for Plaintiff, all to her physical and financial detriment.

32. Insurer Defendants' continued denials of payment for Plaintiff's medical treatment, wage loss, and associated damages caused Plaintiff to suffer extreme distress and anxiety.

33. Despite repeated demands for payment of Plaintiff's recommended medical treatment and associated damages, Insurer Defendants continued to deny and/or delay payment.  Insurer Defendants refused to make any kind of offer to pay for, and/or compensate Plaintiff for her losses until May of 2021, six (6) years after her accident.

34. Insurer Defendants' collective continued denials caused Plaintiff to suffer from extreme financial duress.  Due to the financial and emotional distress aggravation Plaintiff was suffering associated with the unreasonable acts of the Insurer Defendants, Plaintiff stipulated to a settlement and resignation of

her claims and damages associated with her accident, accident-related injuries, and Mr. Sommerfeld's negligence in June of 2021.

35. Insurer Defendants' delay in settling all, and/or undisputed portions of Plaintiff's claim, leveraged the Plaintiff in settling her claim.

## COUNT I: UNFAIR TRADE PRACTICES ACT:

36. The above paragraphs are incorporated and realleged in the allegations set forth here.

37. The Insurer Defendants in concert, acted in a manner that was grossly incongruent with the obligations of persons and/or entities engaging in the business of insurance under Montana law.

38. The Insurer Defendants had the duty to handle Plaintiff's claim in a manner conforming to the Defendants' duties and obligations found under the Montana Unfair Trade Practices Act (UTPA).

39. The Insurer Defendants' actions and inactions in investigating, adjusting, and administering benefits available under The Policy violated MCA § 33-18-201 and specifically sections (1), (2), (3), (4), (6), and (13).

40. The Insurer Defendant's actions and inactions in handling Plaintiff's claim for benefits under The Policy give rise to independent claims under MCA § 33-18-242 and MCA § 33-18-201(1), (4), (5), (6), and (13), of the Montana Unfair Trade Practices Act.

41. The Insurer Defendants' unfair and deceptive practices in violation of MCA § 33-18-242 and § 33-18-201(1), (2), (3), (4), (6), and (13), directly and proximately caused Plaintiff to suffer physical, mental, emotional, and financial damages and losses which entitle Plaintiff to an award of compensatory damages.

42. The Insurer Defendants' unfair and deceptive practices in violation of MCA § 33-18-242 and MCA§ 33-18-201(2), (3), (4), (6), and (13) MCA, warrant the imposition of punitive damages according to MCA § 27-1221.

## COUNT II: COMMON LAW BAD FAITH:

43. The above paragraphs are incorporated and realleged in the allegations set forth here.

44. Throughout the process of investigating, administering, adjusting, and handling Plaintiff's claims, Insurer Defendants had a duty to exercise their duties in a reasonable, prompt, fair, and equitable manner so as not to deprive the Plaintiff of any of the damages to which she was reasonably entitled. This is more commonly known as the duty of good faith.

45. In fulfilling their duty of good faith, Insurer Defendants had a duty to investigate the claim reasonably and promptly; to adjust the claim quickly and fairly; and to administer benefits to which the Plaintiff was reasonably entitled in a prompt, fair, and reasonable manner.

46. Additionally, Insurer Defendants' duty of good faith and fair dealing required Defendants to refrain from acts of coercion, intimidation, and/or the undertaking of any other action that would otherwise deter, dissuade, or cause the Plaintiff to resign her entitlement to her claims for damages under The Policy.

47. Insurer Defendants' duties of good faith and fair dealing also required that Defendants provide complete, true, and accurate information to the so-called expert doctor Insurer Defendants retained to review Plaintiff's medical records in determining whether she was entitled to the medical treatment being recommended by her medical providers under The Policy.

48. Similarly, Insurer Defendants had a duty to promptly review, acknowledge, affirm, and pay for medical treatment for Plaintiff that was consistent with the medical treatment being recommended by her treating medical providers, as well as to pay for all damages related to her claim associated with the accident which occurred on May 16, 2015.

49. Insurer Defendants had a duty to deal promptly and fairly with Plaintiff and to administer benefits available to her under The Policy and the Montana law, quickly, fairly, and without requiring Plaintiff to forego recommended medical treatment, her associated damages, and/or to have to engage in

litigation to obtain the damages associated with her claims under The Policy and/or to resign her claims for damages afforded to her under The Policy.

50. All the Insurer Defendants' duties were to be carried out in a prompt, reasonable, fair, and equitable manner.

51. Insurer Defendants breached their duties of good faith and fair dealing in the investigation, assessment, handling, and administration of Plaintiff's claim for damages under The Policy.

52. Insurer Defendants, individually and in concert, breached all of the above-described duties owed to Plaintiff and instead acted in bad faith during the investigation, assessment, handling, and administration of Plaintiff's claim.

53. Defendants' breach of their duty of good faith and fair dealing caused injury and damages to the Plaintiff which entitle her to an award of damages.

54. Defendants' breach of their duty of good faith and fair dealing warrants the imposition of punitive damages according to MCA § 27-1221.

### COUNT III: INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:

55. The above paragraphs are incorporated and realleged in the allegations set forth here.

56. An independent cause of action for the intentional or the negligent infliction of emotional distress will arise where severe emotional

distress to Plaintiff was the reasonably foreseeable consequence of the Defendants' negligent or intentional act or omission. See, *Sacco v. High Country Indep. Press*, 271 Mont. 209, 896 P.2d 411, 418 (1995).

57. The Insurer Defendants intentionally and negligently inflicted emotional distress upon the Plaintiff by engaging in a course of conduct designed to delay and/or deny medical treatment recommended and requested by Plaintiff's treating medical providers, as well as all other associated damages to which Plaintiff was entitled to receive concurrent with her injuries arising from the May 6, 2015, accident and the admitted malpractice under the Policy.

58. Rather than authorize and pay for the medical treatment that was recommended by Plaintiff's treating medical providers and/or any of Plaintiff's associated damages, Insurer Defendants retained a so-called independent medical doctor to review Plaintiff's medical records. The medical records review was significantly deficient as the "independent" doctor was ill-qualified to render the opinions she provided. Insurer Defendants chose to rely upon the unsupported opinions of a bought and paid for expert rather than those opinions of Plaintiff's treating medical providers, all to the detriment and distress of Plaintiff.

59. The Insurer Defendants inflicted emotional distress on Plaintiff, both negligently and intentionally, by ignoring the recommendations of her treating

health care providers, refusing to pay for the recommended treatment, for Plaintiff's associated damages, and instead relying upon the deficient and uninformed opinions of Defendant Insurer's retained, so-called independent medical examiner.

60. It was a reasonably foreseeable consequence of Insurer Defendants' actions and inactions in delaying and/or denying Plaintiff access to the reasonable and necessary medical treatment recommended by Plaintiff's treating medical providers and delaying and denying Plaintiff all of her damages associated with her injuries, that Plaintiff would be subjected to undue severe emotional pain and distress.

61. The conduct described entitles Plaintiff to an award of damages.

62. In all regards where the Insurer Defendants' actions and inactions were intentional, punitive damages must be considered and awarded under MCA 27-1-221.

## PUNITIVE DAMAGES:

63. The above paragraphs are incorporated and realleged in the allegations set forth here.

64. The representative conduct of the Insurer Defendants, where alleged herein, constitutes actual malice and actual fraud as defined by MCA § 27-1-221, which is sufficient to compel an award of exemplary and punitive damages.

65. The Insurer Defendants have acted with utter and complete disregard for the Plaintiff's rights, interests, health, safety, and welfare.

66. The Insurer Defendants knew facts or intentionally disregarded facts that created a high probability of injury to Plaintiff and deliberately proceeded to act in conscious or intentional disregard, or with indifference, to the high probability of injury to Plaintiff.

67. Plaintiff was injured because of the Insurer Defendants' concerted actions.

68. The Insurer Defendants' concerted, conduct was malicious, willful, and egregious to such a degree, that an award of punitive damages to punish Defendants and to serve as an example to other similarly situated individuals and entities that conduct, of the kind engaged in, is unacceptable in our society.

WHEREFORE, Plaintiff, Lori Meidinger, demands judgment against Defendants as follows:

1. For all past and future special damages in an amount to be proven at trial.
2. For an award of general damages in an amount to be proven at trial.
3. For all damages and punitive damages available under the Counts alleged above.
4. For all other damages to which Plaintiff is entitled under Montana law.
5. For Plaintiff's costs and disbursements incurred in this case.

6. For any other relief, the Court deems just and proper.

7. Plaintiff demands a trial by jury.

DATED this 16th day of May 2022.

                                                TOURTLOTTE LAW FIRM, PLLC

                                                By: /s/ Matthew I. Tourtlotte
                                                       Matthew I. Tourtlotte
                                                       Tourtlotte Law Firm, PLLC
                                                       1643 24th Street West, Ste. 308
                                                       Billings, MT 59102
                                                       *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, Plaintiff served on the following persons by the following means:

| | |
|---|---|
|   1-2   | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | Email |

1. Clerk of United States District Court
   Missouri River Federal Courthouse
   125 Central Avenue West
   Great Falls, MT 591404

                                                /s/ Matthew I. Tourtlotte
                                                Attorneys for Plaintiffs